IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Kenneth A. Austin, | Case No. 3:09 CV 723 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Kenneth Austin filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny a period of disability and Disability Insurance Benefits (DIB). This Court has jurisdiction under 42 U.S.C. § 405(g). This case was referred to United States Magistrate Judge Armstrong for a Report and Recommendation (R&R) pursuant to Local Rule 72.2(b)(2).

After briefing on the merits by both parties, the Magistrate recommended this Court affirm the Commissioner's decision to deny Plaintiff's claims for DIB (Doc. No. 16). Plaintiff filed an Objection to the R&R (Doc. No. 17), to which Defendant filed a response (Doc. No. 18). Plaintiff replied (Doc. No. 19).

In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has reviewed the Magistrate's findings *de novo*. For the reasons set forth below, this Court adopts the Magistrate's recommendation to affirm the Commissioner's decision.

## BACKGROUND

The R&R accurately recites the relevant factual and procedural history (Doc. No. 16, pp. 1-7), and this Court adopts that portion of the R&R in its entirety.

Briefly, Plaintiff served in the Navy until 1989, when his car careened off a 147-foot cliff in Flagstaff, Arizona. Plaintiff broke both his legs and suffered a concussion and amnesia from the accident. He was comatose for three months.

Plaintiff testified that he now has persistent back pain during the majority of the day and, in order to avoid the onset of pain, he lies down (TR 616-17). Plaintiff also has "blackouts" during which he is unconscious for up to fifteen minutes. He attributes the onset of a blackout to stress, extreme physical activity, and heavy lifting (TR 618-19). He claims these blackouts occur even while he is seated (TR 621). Plaintiff also claims to have headaches up to four times weekly that affect his ability to concentrate or engage in functional activities. The medication prescribed for the headaches as well as the back pain causes drowsiness (TR 619-20, 625).

Plaintiff has difficulty walking and balancing with the "plate" and "rod" implants in his legs. He estimated he could occasionally stand approximately thirty minutes (TR 615). However, his ability to walk and stand is complicated by episodes of dizziness (TR 615, 620). He estimated he could walk "about a half a block" with the use of a cane or walker. Plaintiff has difficulty sitting as

well (TR 616, 621). Plaintiff testified that he is forgetful, but unable to characterize his memory difficulty as short or long term (TR 620).

The ALJ, after reviewing the medical evidence and finding Plaintiff not credible, found the following residual functional capacity (RFC): "[Plaintiff can] perform less than the full range of light work, but more than sedentary work. [Plaintiff] should never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; and is frequently unable to understand, remember, and carry out complex or detailed instructions" (TR 20). Relying on the testimony of a Vocational Expert (VE), the ALJ then found there existed jobs Plaintiff could perform consistent with this RFC, Plaintiff's age, education, and work experience. Plaintiff does not now challenge the credibility determination, but instead makes other objections as described below.

## STANDARD OF REVIEW

Reviewing the denial of DIB, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. §405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477

(6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations governing the five-step evaluation of disability are found at 20 C.F.R. §§ 404.1520:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers claimant's residual functional capacity, age, education, and past work experience to determine if claimant could perform other work. *Walters*, 127 F.3d at

4

529. Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## ANALYSIS

Petitioner raises nine objections to the R&R. All but one of these objections rehash Petitioner's arguments before the Magistrate. After considering each in turn, this Court adopts the Magistrate's recommendation to affirm the denial of benefits.

### *Semi-Skilled Job*

The ALJ relied on the VE's testimony, including identification of the information clerk position, and found that either Plaintiff lacked transferable skills, or transferable skills were not an issue in this case (TR 22-23). In response to the ALJ's hypothetical at the hearing, the VE offered three "unskilled" jobs Plaintiff could perform: order clerk, information clerk,[1] and billing clerk. However, "information clerk" is not an unskilled position, but is instead a "semiskilled" position requiring transferable skills. Dictionary of Occupational Titles (DOT) 237.367-010 (4th Ed. 1991) (Specific Vocational Preparation (SVP) level 3, corresponding to a semiskilled position). In other words, the VE's testimony regarding occupations available to Plaintiff conflicted with the description of those occupations in the DOT.

When such a conflict occurs, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE . . . [for] evidence to support a determination or decision about whether the claimant is disabled." S.S.R. 00-4p, 2000 WL 1898704, *2. In this case, the ALJ did not elicit a

---

[1] DOT 237.367-010, cited by the VE and the ALJ, when referencing the "information clerk" occupation, actually terms the position an "appointment clerk."

reasonable explanation from the VE at the hearing, nor did the ALJ recognize a conflict existed, either at the hearing or in his decision.

Both Defendant and the Magistrate rely on *Lindsley v. Comm'r of Soc. Sec'y*, 560 F.3d 601, 605-07 (6th Cir. 2009), to address Plaintiff's objection. But *Lindsley* is not on point. In *Lindsley*, there was no conflict between the VE's testimony and the DOT. *Id.* at 605. There, the VE identified an occupation not described by the DOT, but this was not a conflict because "[t]he DOT contains information about most, *but not all*, occupations." *Id.* (quoting S.S.R. 00-4p, 2000 WL 1898704, *2). Here, as the R&R recognizes, there was a conflict between the VE's testimony and the DOT (Doc. No. 16, pp. 11-12).

An ALJ "may not rely on evidence provided by a VE . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with . . . regulatory policies or definitions." S.S.R. 00-4p. Although the ALJ here relied on such inconsistent evidence, without recognizing the conflict, this error was harmless. This is because the VE identified two other unskilled positions Plaintiff could perform -- order clerk and billing clerk. Those positions truly are unskilled, and the VE's testimony regarding them did not conflict with the DOT.

The VE reported the availability of both positions: 1.2 million in the U.S. and 9,700 in Ohio for Order Clerk; and 1.2 million in the U.S. and 16,000 in Ohio for billing clerk. Therefore, even excluding the information clerk position, there are still some 2.4 million available unskilled positions in the national economy that Plaintiff could perform. The ALJ's error in relying, in part, on the information clerk testimony was therefore harmless.

6

*Mr. Davis*

Plaintiff argues the ALJ improperly discounted the opinion of Psychologist Richard Davis, who evaluated Plaintiff and authored a report and opinion in June 2006 (TR 410-14). Davis was a consultative examiner and therefore is not accorded the deference due to a treating source. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). His report merely parrots what Plaintiff related to him,[2] and his conclusions are unsupported by anything other than the subjective statements of Plaintiff. For example, Davis concludes that Plaintiff has "borderline intellectual functioning" (TR 413) without explanation or record support. Therefore, the ALJ reasonably discounted Davis' opinion. *See Young v. Sec'y of Health & Human Servs.*, 925 F.3d 146, 151 (6th Cir. 1990) (examining source's opinion must be based on sufficient medical data).

*Dr. Layne*

Plaintiff argues the ALJ failed to consider several of Psychologist Dr. Layne's opinions, who evaluated Plaintiff for the Agency in June 2004 (TR 94-99). However, the ALJ did properly consider Layne's opinions.

Plaintiff argues the ALJ ignored Layne's opinion that Plaintiff had an adequate ability to "understand and follow instructions" if the instructions were "oral," but had a "shaky" ability when the instructions were written (TR 99). Plaintiff's argument neglects the fact that the ALJ, in both the hypothetical given to the VE as well as the RFC determination, indicated that Plaintiff is "frequently unable to understand, remember, or carry out complex or detailed instructions" (TR 20, 634). This

---

[2] For example, Davis wrote: "He did not indicate that he had problems getting along with fellow workers and supervisors in his employment" and "He says that he has been told by his employers that he never finishes anything that he starts. I asked him about this and he said that this is true. 'Sometimes I forget what I am supposed to be doing.'" (TR 414).

7

limitation adequately captures Layne's opinion, and is in fact broader than Layne's opinion because it is not limited to written instructions. The ALJ clearly considered Layne's opinion, and summarized it in the ALJ decision (TR 18).

Plaintiff also argues the ALJ ignored Layne's opinion that Plaintiff was limited to simple, repetitive tasks, such as assembly line work. This mis-characterizes Layne's opinion. Rather, Layne opined that with regard to "attending to, persisting at, simple repetitive tasks" Plaintiff was "not impaired. He can sustain concentration. Thus, he can attend to repetitive tasks such as assembly line work" (TR 99). This opinion confirms Plaintiff is capable of simple repetitive work, but not that Plaintiff can *only* perform such work.

### *Dr. Marlow*

Plaintiff objects to the ALJ's questioning of the VE regarding the limitations found by Dr. Marlow, citing *Ealy v. Commissioner of Soc. Sec'y*, 594 F.3d 504 (6th Cir. 2010). *Ealy* stands for the uncontroversial proposition that if an ALJ relies on a VE's testimony in response to a hypothetical, that hypothetical must accurately portray the claimant's limitations. *Id.* at 516-17. Plaintiff mis-characterizes Marlow's opinion. The only limitation found in Marlow's evaluation was a moderate limitation in "the ability to accept instructions and respond appropriately to criticism from supervisors" (TR 109). The ALJ correctly included this limitation in his hypothetical to the VE, and it formed part of the RFC finding (TR 20, 634).

Plaintiff argues Marlow found he was limited to "simple repetitive work . . . in situations where duties are relatively static" and that the ALJ failed to relate this limitation in his hypothetical to the VE. Not so. Marlow found Plaintiff was "not significantly limited" in his ability to "carry out detailed instructions" and "maintain attention and concentration for extended periods" (TR 108).

8

Also, Marlow opined Plaintiff "*could* work at a steady pace to sustain simple repetitive work.  He *can* carry out tasks in situations where duties are relatively static" (TR 110) (emphasis added).  Nowhere does Marlow limit Plaintiff to simple repetitive work in a static situation.

### *Plaintiff's Education*

Plaintiff objects to the ALJ's determination that Plaintiff had a "high school education," relying on *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447 (6th Cir. 1990).  *Skinner* stands for the proposition that the numerical grade level achieved by a claimant "is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist." *Id.* at 450 (citing 20 C.F.R. § 404.1564(b)).  Here, Plaintiff graduated from high school.  Plaintiff argues his numerical grade level was improperly used to determine his educational abilities because he scored in a seventh grade range on the Wide Range Achievement Test III (WRAT-III) (TR 98).  This is the only alleged contradictory evidence to which Plaintiff points.  Dr. Layne, who administered the WRAT-III, indicated that these and other test results were inaccurate or "slightly low estimates" because Plaintiff had no history of "retardation," Plaintiff's "behavior today suggests no retardation," and "he was unmotivated at today's testing" (TR 98).  The WRAT-III test results therefore were deemed unreliable by the administrator of the test.  Given the unreliability of the test as well as the lack of any other contradictory evidence, the ALJ had substantial evidence to conclude that Plaintiff had a high school level education.

### *RFC Finding*

Plaintiff argues that because the ALJ failed to specify his actual exertional capacities between the full ranges of sedentary and light work, substantial evidence does not support the ALJ's conclusion.  Yet the ALJ explained that Plaintiff could do at least sedentary work with other

9

restrictions, and the VE identified only sedentary jobs. While the ALJ determined Plaintiff had an exertional capacity less than the full range of light work, but greater than simply sedentary work, he ultimately relied on the VE's testimony that there were sedentary positions Plaintiff could perform. Were this error, it would be harmless, because sedentary jobs are the least demanding within the range identified by the ALJ. Plaintiff isn't objecting that the ALJ should have found an exertional level below the full range of sedentary work, but is instead arguing the ALJ should have specified Plaintiff's exertional capacity within the range given by the ALJ. The ALJ caused no harm by relying on the exertional capacity (sedentary work) most favorable to Plaintiff's case.

### *20 C.F.R. § 404.1520a*

Plaintiff argues the ALJ failed to follow the procedures of 20 C.F.R. § 404.1520a which require an ALJ to make certain "B-criteria" findings for a medically determinable mental impairment. But Plaintiff then correctly concedes that such an error is not grounds for relief in this Court. *Rabbers v. Comm'r, Soc. Sec. Admin.*, 582 F.3d 647, 657 (2009) (holding a failure to rate the B criteria under Section 404.1520a does not by itself prejudice a claimant).

### *The Cane*

Plaintiff argues the ALJ erred by failing to expressly evaluate the evidence of whether Plaintiff requires the use of a cane, and failing to justify the absence of a cane from the RFC assessment and hypothetical to the VE. But the ALJ did in fact address the medical necessity for a cane.

Plaintiff was fitted with an ankle brace and cane in 2002 (TR 280). His use of the cane was documented in the medical records even after his insured status expired (TR 374, 391, 484, 489, 499). The ALJ did not include the use of a cane in his RFC assessment, nor was it included in his hypothetical to the VE. But the ALJ found that the record did not support a finding that the cane was

10

medically required. "The claimant uses a cane and has been provided with a knee sleeve. Updated radiological testing showed no significant abnormalities other than mild osteoarthritis changes of the knees" (TR 18) (citing the medical record at TR 543-56). While the ALJ could have been clearer in his discussion, this statement expresses the conclusion that the cane is not medically required. *See* S.S.R. 96-9p, 1996 WL 374185, * 7 (requiring the ALJ to decide whether a hand held assistive device is medically required, and if so what effect it has on the claimant's ability to perform sedentary work).

### *De Facto Reopening*

Plaintiff argues the ALJ de facto reopened a previously denied DIB application by reaching the merits as to whether Plaintiff had been disabled since October 15, 2003. Given this Court's holding that the Commissioner did not err in denying Plaintiff a period of disability and DIB, Plaintiff's final objection, even were it to have merit, would not affect the disposition of this case.

### CONCLUSION

The ALJ's conclusions were supported by substantial evidence and were procedurally sound. Each of the objections, discussed above, is denied. Accordingly, this Court adopts the Magistrate's recommendation to affirm the denial of benefits.

IT IS SO ORDERED.

                 s/ *Jack Zouhary*
                 JACK ZOUHARY
                 U. S. DISTRICT JUDGE

                 March 23, 2010